# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION

| | |
|---|---|
| JULIE A. BANKS, | Case No. SA CV 14-01173-AS |
| Plaintiff, | **MEMORANDUM OPINION AND** |
| v. | **ORDER OF REMAND** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

## PROCEEDINGS

On July 24, 2014, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 8-9). On December 15, 2014, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 11-12). The parties

filed a Joint Position Statement ("Joint Stip.") on March 2, 2015, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 14).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed July 29, 2014 (Docket Entry No. 4).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

In March 2009, Plaintiff, formerly employed as a cashier/checker in a grocery store (see AR 90, 276), filed an application for Disability Insurance Benefits, alleging a disability since March 1, 2007. (See AR 23, 67, 86, 112).[1]

On February 8, 2011, the Administrative Law Judge ("ALJ"), Helen E. Hesse, heard testimony from Plaintiff, medical expert Sami Nafoosi, and vocational expert Alan Eye. (See AR 86-106). On February 22, 2011, the ALJ issued a decision denying Plaintiff's application. (See AR 112-20).

Plaintiff requested that the Appeals Council review the ALJ's Decision. (See AR 185, 328-30, 333-34). On May 8, 2012, the Appeals Council vacated the Decsion and remanded the matter in order for the ALJ to do the following: "[A]sk any health care professional who plans to testify to confirm the accuracy of the statement or report of his or her professional qualifications which will be entered into the record as an exhibit. If there is no statement or report of professional qualifications, or the individual indicates the statement or report

---

[1] The administrative record does not contain a copy of Plaintiff's application. (See Joint Stip. at 2 n.1). The exact date in March on which she filed the application is unclear. (See AR 33 [stating March 27, 2009], 67 [stating March 12, 2009], 86 [stating March 12, 2009], 107-08 [stating March 12, 2009], 112, 120 [stating March 12, 2009]).

2

contains an error, the Administrative Law Judge will 'qualify' the health care professional before he or she testifies by asking questions on the record which will elicit the necessary information about his or her qualifications. (See HALLEX I-2-6-70)." (See AR 126-27).

On February 13, 2013, the ALJ heard testimony from Plaintiff, medical expert Arnold Ostrow, and vocational expert Alan Eye. (See AR 67-83). On April 2, 2013, the ALJ issued a decision denying Plaintiff's application. (See AR 23-33). After finding that Plaintiff had severe impairments -- cervical spondylosis, fibromyalgia syndrome, and derangement of the left meniscus (AR 25-33),[2] the ALJ found that Plaintiff had the residual functional capacity[3] ("RFC") to perform light work,[4] with the following limitations: sitting 6 hours in an 8-hour workday; standing and walking 6 hours in an 8-hour workday; occasionally lifting 20 pounds and frequently lifting 10 pounds; no operating foot pedals with the left lower extremity; occasionally climbing stairs, bending, balancing, kneeling and crouching; no ladders, ropes, scaffolding, stooping or crawling; no working at unprotected heights; and no lifting above shoulder level with both upper extremities. (AR 27-31). After finding that Plaintiff could not perform her past relevant work as a cashier/checker (AR 31-32), the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 32-33).

---

[2] The ALJ found that Plaintiff's right shoulder supraspinatus tendinopathy and colitis were non-severe impairments, and that Plaintiff's plantar fasciitis was not a medically determinable impairment. (See AR 25-26).

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Plaintiff requested that the Appeals Council review the ALJ's 2013 Decision. (See AR 18-19 ). The request was denied on May 21, 2014. (See AR 4-8). The ALJ's 2013 Decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to properly: (1) determine whether Plaintiff could perform other jobs; and (2) reject Plaintiff's testimony. (See Joint Stip. at 4-13, 16-24).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's second claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's second claim of error, the Court will not address Plaintiff's first claim of error.

**A. The ALJ Failed to Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for finding Plaintiff not credible. (See Joint Stip. at 18-24). Defendant asserts that the ALJ properly found Plaintiff not credible. (See Joint Stip. at 22-23).

Plaintiff made the following statements in an undated Disability Report - Adult: Fibromyalgia, constant fatigue, muscle aches, headaches, irritable bowel syndrom, and injuries to her feet, back and neck limit her ability to work. She cannot do anything, including siting, standing

4

and walking, for a long period of time, and her arms, neck, back, and shoulders constantly ache. (See AR 275, 280).

Plaintiff made the following statements in an undated Disability Report - Appeal: Her conditions make it much harder for her to take care of her personal needs, and she needs to rest a lot. It is very hard for her to do household chores; she had to rest all day to function. She tries to do a few pool activities, but she cannot do any hobbies. (See AR 302).

Plaintiff made the following statements in an Exertion Questionnaire dated June 5, 2009:

> (1) she lives in a house with family; (2) her pain, fatigue, weakness, diarrhea and dizziness effect her way of life; she has to rest until 2 p.m. to be able to help her children with homework and to cook dinner (and sometimes she cannot even do that much); (3) her fibromyalgia does not allow her to do much on a daily basis (when she tries to do something, her body pays for it later [for example, cleaning house windows resulted in her not being able to use her arm for days]; she goes to the pool to do leg exercises 3 times a week and goes into the Jacuzzi every night to relax her muscles; she is not able to sleep at night due to leg cramps; (4) she avoids walking long distances because of foot problems; she uses orthopedics in her shoes and wears specific athletic shoes; (5) she can climb stairs, but climbing one flight causes her to feel week and her legs to feel strained and aching (she sometimes needs to lay down to regain her leg strength); (6) She tries not to lift anything over a couple of pounds (i.e., pots, pans, small loads of laundry, grocery bags); when she does lift something heavier her right shoulder hurts and prevents her from moving her arm; (7) she does grocery

5

shopping with the help of her four children (ages 19, 18, and 10 [twins]); (8) she does not clean her home or living area; (9) she drives a car, for a distance of probably 20 miles at one time; (10) she does not work on cars or do yard work; (11) before her disability she did a lot of chores, but now needs to rely completely on her children to do them; (12) she has difficulty finishing housework because of stairs and having to stand for too long (washing dishes); (13) she sleeps 8 to 9 hours, but requires 3 naps (1 to 2 hours) during the day; (14) she takes Neurontin 300 mg (3 times a day), Cymbalta 30 mg (1 time a day); Hydrocodone 500 mg (1 to 3 times a day), and Aleve 200 mg (2 pills, two times a day); (15) she does not use any assistive device; and (16) her previous disabilities (neck, feet and lower back) and her fibromyalgia cause her to feel depressed, and her doctor is still trying to find the right combination of medications for her.

(See AR 284-86).

At the February 8, 2011 hearing, Plaintiff testified to the following:

She is 43 years old, graduated high school in 1986, and attended one semester of community college. She lives with her husband, two sons, and one of her daughters. She has a California Driver's License and drives a van. Her family has one dog, a labradoodle. She last worked in June 2004 (as a retail checker at Vons) but had to leave that job because of plantar fasciitis, heel spurs and neuromas (surgery on her feet did not help). She worked at Vons a total of 17 years. (See AR 87-90, 93-94).

> She is not able to work because of chronic fatigue and radiating pain in her arms, shoulders and neck and down her back (which affects her legs). She is taking Cymbalta 60 mg (one time a day), Lyrica 50 mg (two times a day), Vicodin 500 mg (two times a day), and sometimes Flexiril (a muscle relaxer, to sleep). The medications help her with her pain, and help somewhat with depression from her pain and chronic fatigue. For pain relief she also goes into a Jacuzzi about 4 times a week. (See AR 91-92).

> She has done water aerobics (to strengthen her muscles) for approximately 5 years, on and off. (She has not done them in a while because she has not felt good). She walks 15 minutes a day, two times a day. She does stretches at home. She takes a lot of naps. She listens to music. She helps her sons with their homework. She does not read, watch television, or use a computer (once a day she uses her husband's computer to find out about her son's homework).

(See AR 92-93).

At the February 13, 2013 hearing, Plaintiff testified to the following:

> She still lives with her husband and children, she still has her driver's license and drives the van, and she still does her water aerobics and stretches. She walks the dog for 10 to 12 minutes, two times a day. The dog has a little backpack to help carry in groceries. (See AR 68-70).

> She can pick up 8 pounds, at most. She can continually stand for no more than 30 minutes. She can walk for about a mile (which takes her about 12 minutes). Walking causes her

7

legs to be strained and heavy; she usually has to sit down and take off her shoes and put on orthotic Crocs. She is not able to sit on a continuous basis for 8 hours a day; she needs to walk around and stretch after 30 minutes of sitting. (See AR 71-80).

She has pain every day -- in her neck, shoulders, and lower back. She does not have pain in her hands; they just feel weak. She has good days and bad days; treatment from her doctor (like getting a steroid pack) for a "flare up" (something caused by a change in her daily conditions) would probably make her feel better for 3 days. She once was bedridden; she suffered an episode in her neck which caused her to use a neck brace and heavy muscle relaxers and pain medication. (See AR 80-81).

The pool is a form of treatment for her fibroymalgia; it allows her to meditate and do arm stretches (and then go into the Jacuzzi to massage her muscles). As far as medication for her impairments, she takes Naproxen (Aleve) 400 mg (two times a day), occasional pain medications (such as Norco for 30 days when she has a "flare up"), Lyrica (for her fibromyalgia), and Cymbalta (an antidepressant, for her fibromyalgia). (See AR 77-78, 80-82).

With respect to daily activities, her identity has changed due to lessened activities (she is a little slower). She gets her sons ready for school, drives them to school down the street, drives home, walks the dog, takes a nap, has lunch, walks the dog, goes to the pool (if it is warm enough) to do stretches and work on her posture, go to the Jacuzzi, watches some television, helps her sons with their homework, and gets dinner started with her sons' help, and stays up

until 9:00 p.m.  (She stated that during the day she probably rested three times "with probably 30 to 45 minute[s] laying down and getting ready for the next activity."). (See AR 77).

Her daughters and sons help her with household chores. Everybody helps with the cooking of dinner.  Her sons (with her supervision and directions) do some cooking, set the table, clean up after dinner (i.e., putting plates in the dishwasher), bring down clothes that need to be washed, and help her with the grocery shopping (she does not have to lift or carry anything).  (See AR 78-79).

With respect to her personal care, she cannot style her hair like she used to (the clips hurt her head and her hair is too heavy and hard to brush).  She is only able to shower every other day.  (See AR 79).

After briefly summarizing Plaintiff's statements in the Disability Report - Adult, and the Disability Report - Appeal, and Plaintiff's testimony at the February 13, 2013 hearing (see AR 28), the ALJ stated: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (Id.).

After making a determination of Plaintiff's RFC based, in part, on a review and consideration of the treating, examining, and reviewing medical sources (see AR 28-30), the ALJ addressed Plaintiff's credibility as follows:

One factor affecting the claimant's credibility is her treatment history. The claimant's medical records show almost continuous access to treatment based on the medical records in Exhibit 2F, 4F, 6F, 7F and 8F. In addition, these treatment notes also show very few actual examinations for her treatment physicians as the bulk of her treatment notes are records of continued prescriptions for her medications. For example, there is a treatment note dated May 24, 2011 (see Exhibit 7F/14) and the next treatment note is not dated until December 14, 2012 (see Exhibit 8F/3). The records between those dates as shown in Exhibits 7F and 8F are all notations of continued prescriptions for her medications (see Exhibits 7F and 8F). This shows the claimant only needed continued prescriptions for her medications and did not need additional observations from her treating physicians for much of her recent treatment history. This also shows the claimant's impairments are not as significant as alleged as she did not require additional observations or visits with her treating physicians. Thus, the undersigned finds the claimant's credibility is affected by her treatment history.

Another factor affecting her treatment history is the notations of other measures that affect her symptoms. The treatment note dated December 14, 2012 notes the claimant is using a Jacuzzi to help her symptoms (Exhibit 8F/3). This shows the claimant has access to other methods of symptom control and that she is using them to help control her symptoms. This also negates her allegations about the significant nature of her symptoms as they are helped by less invasive and other non-medically related methods. Thus, her credibility is affected by this.

>Further, the claimant's work history affects her credibility. The claimant's earnings record shows she ceased all work activity in 2004 or 2005 (see Exhibit 12D). Since then the claimant has posted no additional, countable earnings. This corroborates the claimant's allegations that she has not been able to work for a number of years. Thus, the undersigned finds that the claimant's work history bolsters her credibility.
>
>\* \* \* \*
>
>. . . Additionally, the claimant's statements and allegations about the severity and effect of her impairments cannot be given full weight because, as discussed above, the factors that affect her credibility outweigh the factors that bolster her credibility.

(AR 31).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen v. Chater, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Here, the ALJ failed to provide clear and convincing reasons for his finding that Plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible.[5]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen v. Chater, supra, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the ALJ's discrediting of Plaintiff's testimony because she "only needed continued prescriptions for her medications and did not need additional observations for much of her recent treatment history" was improper. Although, as the ALJ noted, Plaintiff's treatment records reflect mostly continued prescriptions for medications, rather than additional visits with physicians for her fibromyalgia (see AR 31, citing AR 729-51, 754-60), there is no evidence that Plaintiff failed to follow a course of treatment for her fibromayalgia, or that additional or more intensive treatments were recommended or available to treat her fibromaylgia. See Benecke v. Barnhart, 379 F.3d 587, 590 ("Fibromyalgia's cause is unknown, there is no cure, and it is poorly understood within much of the medical community."); see also Lapeirre-Gutt v. Astrue, 382 Fed.Appx. 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment

---

[5] The Court will not consider reasons for finding Plaintiff not fully credible (see Joint Stip. at 20) that were not given by the ALJ in the Decision. See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 US 194, 196 (1947).

options where none exist."). Moreover, at the hearings, the ALJ did not ask Plaintiff why she did not pursue additional or more intensive treatments for her fibromyalgia.

Third, the ALJ's discrediting of Plaintiff's testimony because her symptoms apparently improved based on her use of a Jacuzzi (see AR 31, citing AR 754 [Treatment record dated December 14, 2012, noting that "Relieving factors tried including jacuzzi helps")] was also improper. That treatment record (which was discussing Plaintiff's neck pain) did not state that the use of a Jacuzzi completely alleviated Plaintiff's symptoms.  Indeed, that same treatment record (immediately prior to the notation about Plaintiff's use of a Jacuzzi) notes: "The problem is severe.  The problem has worsened.  The frequency of pain is constant.  Location of pain is bilateral shoulder.  The patient describes the pain as sharp and shooting." (AR 754).  Moreover, other treatment records do not reflect improvement in Plaintiff's condition.  (See e.g., AR 740 [Treatment note dated May 24, 2011, noting that Plaintiff had suffered a flare up of fibromyalgia]), AR 426-27 [Treatment records dated September 11, 2008, noting that Plaintiff had not gotten any improvement from prior epidurals], and AR 388 [Treatment record dated September 22, 2008, noting that Plaintiff's neck and arm pain persisted after a steroid injection]).

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the

13

circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[6]

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 16, 2015.

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claim regarding the ALJ's alleged failure to properly determine whether Plaintiff could perform other jobs (see Joint Stip. at 4-13, 16-18). Because this matter is being remanded for further consideration, this issue should also be considered on remand.